JUDGE KARAS

**16 CV 5173**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X   Civ. No. _____

NUANCE COMMUNICATIONS, INC.,

                     Plaintiff,   :   **COMPLAINT**

    - against -

INTERNATIONAL BUSINESS MACHINES
CORPORATION

                    Defendant.
-------------------------------------------------------------- X

RECEIVED JUN 30 2016 CASHIER'S OFFICE S.D.N.Y.

1.    Plaintiff Nuance Communications, Inc. ("Nuance") as its complaint against Defendant International Business Machines Corporation ("IBM") alleges as follows:

## NATURE OF THE ACTION

2.    This action arises out of IBM's refusal to deliver to Nuance all updates, modifications, and upgrades (collectively, "Updates" or "Modifications") to DeepQA – the software powering IBM's Watson -- as required under the parties' September 30, 2010 software license agreement (the "Agreement"). The Agreement is attached hereto as Exhibit 1.

3.    Before Watson gained notoriety, Nuance paid IBM ████████ ████████ for an early, ground-floor level license to the Watson software, plus any and all Updates to the software ████████████.

4.    As a leading provider of voice and language solutions for businesses and consumers around the world, Nuance recognized the potential synergies between IBM's DeepQA software and Nuance's own technologies, and the vast commercial potential of DeepQA in a wide range of fields and applications ranging from healthcare, banking, retail and

education. Nuance thus sought, and was willing to pay IBM handsomely for, an early, broad license to IBM's nascent DeepQA software, including the right to future Updates.

5. On September 30, 2010, Nuance and IBM entered into the Agreement pursuant to which IBM granted Nuance ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. Section 1.1 of the Agreement requires IBM to deliver to Nuance the "Licensed IBM Background Software," which includes, without limitation, "any modifications, updates, upgrades . . . and other changes, if available . . . ███████████████

6. Nuance insisted on the right to any Updates for a period of 10 years because Nuance anticipated that IBM would continue to develop DeepQA particularly as commercial applications for Watson became more realizable. Nuance never would have agreed to pay ███ for just the DeepQA software as it existed at the time the Agreement was executed. The value was getting in on the ground floor of what Nuance hoped would be significant development over ████████. Put simply, Nuance paid to be on the ground floor of what it believed would be a significant, ongoing development effort by IBM.

7. Nuance has satisfied all of its obligations under the Agreement, including by paying IBM ████████ in early 2011.

8. The required Updates have special and unique value to Nuance, given the uniqueness of the Watson code and the vast potential uses of the Watson code in commercial applications.

9. IBM, however, has not provided all of the required Updates and recently admitted to Nuance that it has not provided all Updates and has refused Nuance's demand that it do so.

WEIL:\95769553\3\51991.0018

Through this action, Nuance seeks an order requiring IBM to deliver all Updates to Watson developed to date anywhere within IBM and requiring IBM to provide future Updates ████ ████████████████████.

## THE PARTIES

10. Plaintiff Nuance is a Delaware corporation with its principal place of business Burlington, Massachusetts.

11. Defendant IBM is a New York corporation with its principal place of business in Armonk, New York.

## JURISDICTION

12. This Court has specific personal jurisdiction over IBM by virtue of its contacts with this judicial district related to the dispute in this case, including negotiating and executing the Agreement and refusing to deliver all Updates. Upon information and belief, IBM has also transacted business in this judicial district sufficient for this Court to have general jurisdiction over IBM. This Court also has personal jurisdiction over IBM pursuant to Section 7.14 of the Agreement which specifies that any proceedings to resolve disputes relating to this Agreement will be brought only in the State of New York, and in a U.S. federal court if there is jurisdiction.

13. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1391(b)(1) because IBM resides in this district and pursuant to § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND FACTS

### IBM and Nuance Enter into the Agreement

15. Nuance is a leading provider of voice and language solutions for businesses and consumers around the world.

16. Recognizing the potential synergies between Nuance's voice and natural language processing and understanding technologies and the DeepQA software which powers IBM's Watson, Nuance was among the first companies to collaborate with and seek a broad license from IBM for its DeepQA software.

17. IBM and Nuance entered into the Agreement on September 30, 2010. In exchange for payments totaling ▮▮▮▮ IBM granted Nuance a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Among other things, Nuance's license permits Nuance to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18. The definition of Licensed Background Software set forth in Schedule A includes, without limitation, both the original software developed and delivered by IBM Research Group as of the Effective Date, plus "any modifications, updates, upgrades . . . and other changes, if available . . . ▮▮▮▮▮▮▮▮▮▮ . . ."

19. Pursuant to the Agreement, IBM was required to deliver any Updates developed by IBM, even those developed outside of IBM Research Group.

20. Nuance did not – and would not – have agreed to pay ▮▮▮▮ just to receive Updates developed by IBM Research Group. Otherwise, nothing would preclude IBM from

reassigning critical development work outside IBM Research Group to deprive Nuance of the benefit of its bargain (as has occurred).

21.  The definition of Licensed Background Software makes clear that the Updates obligation belongs to IBM and covers any Updates developed anywhere with IBM. Specifically, in defining that term, the definition encompasses Modifications and Updates "provided *by IBM* to Nuance under the Agreement."

22.  Other provisions in the Agreement further reflect the parties' intention that IBM deliver any Updates, including those developed outside of IBM Research Group. For example, Section 2.4 provides that "if *IBM* provides any modifications, updates, upgrades . . . and other changes to the Licensed IBM Background Software, *IBM* will update Exhibit B to include any additions or subtractions to the Open Source Software or the Third Party Code." (emphasis added).

23.  The Agreement also makes clear in section 7.11 that the term "IBM" means IBM Corporation unless otherwise expressly limited to a division or group of IBM Corporation.

24.  IBM also knows that the Updates/Modifications s obligation extends to all of IBM, not just IBM Research. For example, on August 15, 2011, IBM's Ken King delivered a proposed "SLA Amendment" in which IBM requested "adjustments" to the Agreement. The proposed adjustments included an amendment to the definition of "Modifications" to include only those developed by IBM Research Group employees rather than modifications developed anywhere within IBM. IBM proposed this amendment to attempt to change the obligation under the Agreement requiring IBM to deliver all Updates/Modifications, regardless of where they were developed within IBM. However, Nuance rejected this proposed amendment, keeping IBM's obligation under the Agreement unchanged.

25. Nuance insisted on the right to any Updates, regardless of where they were developed within IBM, ▌ Nuance entered into the Agreement, and agreed to pay IBM ▌ because it was receiving not just the right to the existing Licensed IBM Background Software as of September 30, 2010, but also the right to any future Updates developed by IBM ▌

### Nuance Learns of IBM's Breach

26. In or around early January 2015, Bill LaFontaine, an IBM Research Group employee, informed Nuance's Jeanne McCann that IBM's Watson team was not using IBM Research Group code, but "basically wrote all new code" and that IBM was not prepared to provide the Watson code in total to Nuance. In other words, IBM was confessing to Nuance that it had forked its ongoing development of Updates of the Licensed IBM Background Software and that it was not and will not provide the Updates developed outside of IBM Research Group.

27. LaFontaine, however, offered Nuance a subset of the Updates being withheld by IBM called "WatsonPaths," which, upon information and belief, is a small subset of the withheld Updates relating to medical training. He proposed that Nuance accept this subset of the withheld Updates in full satisfaction of IBM's obligation to deliver all Updates available. Knowing that the Agreement entitled it to all Updates, Nuance rejected this offer.

28. LaFontaine's disclosures admitted that IBM was not delivering all Updates as required by the Agreement. Prior to LaFontaine's disclosure, IBM had concealed from Nuance that it was not delivering all Updates to the Licensed IBM Background Software, including by delivering low-value updates, such as bug fixes and speed upgrades, to create the false impression that IBM was complying with its obligation to deliver all Updates to the Licensed IBM Background Software.

WEIL:\95769553\3\51991.0016

### Watson Becomes a Cornerstone of IBM's Business

29. After IBM and Nuance entered into the Agreement, IBM continued to develop Watson, including developing Updates, which is now a centerpiece of IBM's marketing and business strategies.

30. As IBM explained it its 2015 Annual Report: "Watson has come a long way since it won on the American quiz show Jeopardy! in 2011. Back then, it did one thing: natural language Q&A, powered by five technologies. Today, Q&A is just one of more than 30 Watson capabilities all of which have been turned into digital services, or application programming interfaces (APIs), delivered via the cloud. This means that we can literally build cognition into everything digital. With Watson, every digital application, product and process can understand, reason and learn."

31. With its many Updates, IBM is reaping the benefits of the DeepQA software right now.

32. Yet, IBM has withheld all of these and other unique and valuable Updates from Nuance in violation of its contractual obligations under the Agreement.

### Nuance Has and Continues to Suffer Irreparable Damage

33. While Watson has become a crown jewel of IBM's business, Nuance has been unable to commercially exploit the Licensed IBM Background Software at all because, without the Updates being withheld by IBM, it is not robust or accurate enough to be incorporated into commercial products.

34. As a result of IBM's failure to deliver the required Updates to the Licensed IBM Background Software, the value of Nuance's license has been impaired and Nuance has lost unquantifiable commercial opportunities. Monetary damages are insufficient to provide full,

7

WEIL:\95769653\3\51991.0016

adequate and complete remedy to Nuance, including because it is impossible to ascertain with certainty Nuance's direct damages and because Section 6.5.3 of the Agreement purports to limit the parties' liability for consequential damages. In addition, given the uniqueness of the Watson software, the required Updates have unique value to Nuance so that damages will not provide a complete and adequate remedy.

### First Claim for Relief

### (Declaratory Judgment – 28 U.S.C. § 2201)

35. Nuance incorporates paragraphs 1-34 as though fully set forth herein.

36. Pursuant to the terms of the Agreement, IBM is required to deliver all Updates of the Licensed IBM Background Software to Nuance, regardless of where they are developed within IBM.

37. IBM denies that it is obligated to deliver Updates developed outside of IBM Research Group.

38. This controversy is real, immediate, and ripe for adjudication. IBM has refused to and continues to refuse to deliver all Updates to the Licensed IBM Background Software, including those developed outside of IBM Research Group.

39. Absent a declaration from this Court that IBM is required to deliver all Updates of the Licensed IBM Background Software, regardless where they are developed within IBM, Nuance will continue to be harmed, including as a result of the loss of unquantifiable commercial opportunities.

40. Nuance is entitled to relief in the form of a declaratory judgment and order that IBM is required to deliver all Updates to the Licensed IBM Background Software, regardless of where they are developed within IBM.

## Second Claim for Relief

### (Breach of Contract)

41. Nuance incorporates paragraphs 1-40 as though fully set forth herein.

42. Nuance has a contractual relationship with IBM under the Agreement.

43. Nuance has performed all of its obligations under the Agreement.

44. IBM breached Section 1.1 and 2.1 of the Agreement by failing to deliver all Updates of the Licensed IBM Background Software, including those developed outside of IBM Research Group.

45. Monetary damages are not sufficient to provide full and complete remedy to Nuance.

46. IBM should be required to specifically perform its obligation under Section 1.1 and 2.1 of the Agreement to deliver all Updates of the Licensed IBM Background Software regardless of where they were developed within IBM.

## Third Claim for Relief

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

47. Nuance incorporates paragraphs 1-46 as though fully set forth herein.

48. The Agreement, the relationship between IBM and Nuance, and common law imply a covenant of good faith and fair dealing between IBM and Nuance.

49. IBM is in breach of those covenants of good faith and fair dealing by, upon information and belief, splitting the ongoing development of the DeepQA software into two code bases, with valuable code improving the functionality of the DeepQA software developed outside of IBM Research Group, in an attempt to deprive Nuance of the benefit of its bargain

9

(i.e., the right under Section 1.1 and 2.1 of the Agreement to any available Updates of the Licensed IBM Background Software).

50. IBM's actions have caused and are continuing to cause serious and irreparable harm to Nuance, warranting an order of specific performance compelling IBM to deliver all Updates of the Licensed IBM Background Software, regardless of where they were developed within IBM.

## PRAYER FOR RELIEF

For these reasons, Nuance respectfully requests that this Court:

a) Enter a declaratory judgment in favor of Nuance on the first claim for relief that IBM is obligated to deliver all Updates to the Licensed IBM Background Software to Nuance regardless of where they are developed within IBM;

b) Enter judgment in favor of Nuance on its second and third claims for relief requiring specific performance and ordering IBM to deliver all Updates of the Licensed IBM Background Software to Nuance; and

c) Award Nuance such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 29, 2016

WEIL, GOTSHAL & MANGES LLP

By: _____
David J. Lender (DL-1554)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Tel: (212) 310-8000
Fax: (212) 310-8007

10

David R. Singh
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000
Fax: (650) 802-3100

*Attorneys for Plaintiff Nuance Communications, Inc.*