IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

NUANCE COMMUNICATIONS, INC.,

    Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION

    Defendant.

NO. 16-CV-5173 (KMK)(JCM)

---

**PLAINTIFF NUANCE COMMUNICATIONS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

    I.     NUANCE PAID IBM ▮▮▮▮▮ IN EXCHANGE FOR A LICENSE TO THE DEEPQA SOURCE CODE AND ALL UPDATES THERETO FOR ▮▮▮ .................................................................................................2

    II.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .............4

ARGUMENT ...................................................................................................................................5

    I.     LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT ..........................5

    II.    THE SLA'S CLEAR AND UNAMBIGUOUS LANGUAGE ENTITLES NUANCE TO UPDATES FROM ALL OF IBM ................................................................6

CONCLUSION ..............................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................................5

*Bickerstaff v. Vassar Coll.*,
   196 F.3d 435 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999).........................5

*Destiny USA Holdings, LLC v. Citigroup Global Markets Realty Corp.*,
   897 N.Y.S.2d 669 (N.Y. Sup. Ct. 2009), *aff'd as modified*, 69 A.D.3d 212, 889 N.Y.S.2d 793
   (4th Dep't 2009).........................................................................................................................7

*Greenfield v. Philles Records, Inc.*,
   780 N.E.2d 166 (N.Y. 2002)..................................................................................................6, 7

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*,
   424 F.3d 195 (2d Cir. 2005)......................................................................................................8

*Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010)......................................................................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..................................................................................................................5

*Mionis v. Bank Julius Baer & Co.*,
   301 A.D.2d 104 (1st Dep't 2002)..............................................................................................7

*Omni Quartz, Ltd. v. CVS Corp.*,
   287 F.3d 61 (2d Cir. 2002)........................................................................................................5

*Paneccasio v. Unisource Worldwide, Inc.*,
   532 F.3d 101 (2d Cir. 2008)......................................................................................................8

*Porco v. Lexington Ins. Co.*,
   679 F. Supp. 2d 432 (S.D.N.Y. 2009)...................................................................................5, 6

*RJE Corp. v. Northville Indus. Corp.*,
   329 F.3d 310 (2d Cir. 2003)...................................................................................................6, 8

*Two Farms, Inc. v. Greenwich Ins. Co.*,
   628 F. App'x 802 (2d Cir. 2015) ............................................................................................6, 9

**Rule**

Fed. R. Civ. P. 56(a) .........................................................................................................................5

**Other Authorities**

AI Learns the Art of Debate, June 18, 2018, *available at*
https://www.ibm.com/blogs/research/2018/06/ai-debate/ ..............................................................1

**PRELIMINARY STATEMENT**

Nuance filed this lawsuit against IBM after it learned that IBM was not living up to the promises it had made in the parties' September 2010 software license agreement (the "SLA"), and its subsequent assurances, to deliver all "modifications, updates, upgrades, error corrections, bug fixes . . . and other changes" to the licensed DeepQA source code, which is the question and answering technology behind IBM's Watson. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[1]  Nuance has asserted claims for breach of contract and the implied covenant of good faith and fair dealing and seeks an Order requiring IBM to deliver all of these updates to Nuance and to extend the update term given IBM's failure to abide by its obligations over the past several years.  These claims will be the subject of a future trial between the parties.

Nuance's motion for summary judgment is aimed at a narrow contract issue – whether the parties' contract requires IBM to provide updates developed anywhere within IBM (which

---

[1] IBM has also failed to deliver updates to DeepQA developed within IBM Research Group.  For example, IBM recently publicly acknowledged—after the close of discovery in this case—that IBM Research Group has continued to develop technologies IBM touts as "enhancing" Watson's features.  *See* AI Learns the Art of Debate, June 18, 2018, *available at* https://www.ibm.com/blogs/research/2018/06/ai-debate/ ("This technology will expand upon the capabilities of IBM Watson . . . . and it will contribute to enhancing Watson's advanced language and dialogue features.").  Despite its litigation position that it is only obligated to deliver updates created by IBM Research Group, IBM failed to deliver even these updates to Nuance.

Nuance claims) or whether it requires IBM only to provide updates developed within IBM Research (which IBM claims). Based on the plain language of the contract, Nuance contends that its interpretation is the correct one. Indeed, the update clause explicitly provides for ▮ of "modifications, updates, upgrades, error corrections, bug fixes . . . and other changes" to DeepQA to be "provided to Nuance by *IBM*," which is defined in the contract as IBM Corporation. *See* Decl. of David J. Lender dated July 27, 2018 ("Lender Decl.") Ex. B ("SLA") § 7.11 & Sched. A; *see also* Pl.'s Local Rule 56.1 Statement ("56.1 Statement") ¶¶ 1, 11-12, July 27, 2018. This and other clauses discussed below supports Nuance's interpretation. Accordingly, Nuance seeks summary judgment on its declaratory judgment claim.

## FACTUAL BACKGROUND

I. **NUANCE PAID IBM ▮ IN EXCHANGE FOR A LICENSE TO THE DEEPQA SOURCE CODE AND ALL UPDATES THERETO FOR ▮**

In the summer of 2010, IBM approached Nuance about licensing its DeepQA technology ▮. *See* 56.1 Statement ¶¶ 4-5. The focus of DeepQA is to intake and understand a natural language question from a user, develop and evaluate potential answers to that question, and then provide the answers in which DeepQA has the most confidence back to the user. *Id.* ¶ 2. IBM initially developed DeepQA to compete against human champions on the television game show *Jeopardy!*. *Id.* ¶ 3. Nuance obviously was not interested in licensing this technology to play *Jeopardy!*; thus, when IBM presented DeepQA to Nuance, the parties discussed DeepQA's potential future application to other domains, including healthcare, banking, and customer service. *Id.* ¶ 6.

In August and September 2010, the parties, represented by counsel and business executives, spent several weeks negotiating a license agreement. *Id.* ¶¶ 7-9. When IBM's first draft of the proposed agreement did not contain any provisions regarding updates to DeepQA,

2

Nuance pushed back and demanded that IBM provide all future updates and upgrades to the source code. *Id.* ¶¶ 7-8. IBM ultimately acquiesced to Nuance's demand, and the resulting agreed-upon definition of "Licensed IBM Background Software" in the SLA provides:

> 'Licensed IBM Background Software' means (a) all Software that exists as of the Effective Date in all available formats (including Source Code and Object Code) that is owned by, or that has been developed or licensed by the IBM Research Group, including Tools, and that is listed on Exhibit A, *including any modifications, updates, upgrades, error corrections, bug fixes, diagnostic and/or testing tools, that are JDBC compliant, and other changes, if available ('Modifications')*, and if such Modifications are not contractually prohibited under a Third Party Agreement, and such Modifications are available, will be timely provided to Nuance; and where the Modifications continue to meet the scope contemplated in Article 2.1 regarding the licensing of Deep QA under this Agreement, as of the Effective Date and thereafter *for a* ▇▇▇▇▇▇▇▇▇▇, *and additional Software as agreed by the parties, provided to Nuance <u>by IBM</u> under the Agreement (collectively 'Updates')*; and (b) all Software Materials for such Software. For clarity, as of the Effective Date the 'Licensed IBM Background Software' excludes Third Party Code listed in Exhibit B.

(Hereinafter, the "Updates Provision"). *Id.* ¶¶ 9-11 (citing SLA at Sched. A) (emphasis added).

The SLA also clearly and expressly provides:

- "As used in this Agreement, *all references to 'IBM' mean IBM Corporation*, unless otherwise expressly limited to a division or group of IBM Corporation herein." *Id.* ¶ 12 (citing SLA at § 7.11) (emphasis added); and

- "If *IBM* provides . . . any modifications, updates, upgrades, error corrections, bug fixes, diagnostic and/or testing tools and other changes to the Licensed IBM Background Software, *IBM* will update Exhibit B [to the SLA] to include any additions or subtractions to the Open Source Software or the Third Party Code." *Id.* ¶ 13 (citing SLA § 2.4) (emphasis added).

In exchange for the license and ▇▇▇▇▇ of Updates, Nuance paid IBM ▇▇▇▇▇▇. *Id.* ¶ 10.

3

**II.** ███████████████████████████████████████████████████████

Despite its contractual obligation to provide Nuance with all Updates, ████

████████████████████████████████████████████████████████████

████████       █████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 21.  Specifically, IBM "forked" or copied the DeepQA source code, providing a full copy of IBM Research Group's code to the IBM Software Group, ███████████████████████████

████  *Id.* ¶ 16. ██████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████ *Id.* ¶¶ 17-18.  Further, though the IBM Software Group had access to IBM Research Group's DeepQA work, that access was not reciprocal.  *Id.* ¶ 19. █████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████. *Id.* ¶ 20.  The IBM Software Group and IBM Watson Group then updated and enhanced DeepQA████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. *Id.* ¶¶ 22-24.  IBM did not provide any of the Updates or new products to Nuance.  *Id.*[2]

---

[2] Although not relevant to the instant motion, which relies on the plain language of the contract, the extrinsic evidence also supports Nuance's position.  For example, less than a year after executing the SLA, IBM sent Nuance a redline of the Updates Provision with IBM's "requested adjustments" to the definition of "Licensed IBM Background Software" (the "Proposed Amendment").  *Id.* ¶¶ 25-26.  The Proposed Amendment sought to add language to the Updates Provision that ████████████████████████████████████████████████████████

████████████  *Id.* ¶ 27 (emphasis added).  IBM was plainly aware that the existing Updates

**ARGUMENT**

I.   **LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."), *as amended on denial of reh'g* (Dec. 22, 1999). Where the record cannot lead a rational factfinder to find for the non-movant, "there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587. Summary judgment is appropriate here as "[t]he proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002); *see also Porco v. Lexington Ins. Co.*, 679 F. Supp. 2d 432, 436 (S.D.N.Y. 2009) (Karas, J.) ("A court may grant summary judgment when the contractual language is 'plain and unambiguous.'") (internal citations omitted).

---

Provision extended to all of IBM—otherwise, the Proposed Amendment would be unnecessary ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* ¶¶ 28-29. Nuance rejected the Proposed Amendment. *Id.* ¶ 30.

5

II. **THE SLA'S CLEAR AND UNAMBIGUOUS LANGUAGE ENTITLES NUANCE TO UPDATES FROM ALL OF IBM**

Nuance seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the SLA requires IBM to provide Updates from all of IBM, not just IBM Research Group. Under New York law, which governs the SLA (*see* Lender Decl. Ex. 1 at § 7.14), courts "give effect to the intent of the parties as expressed in the clear language of the contract." *Two Farms, Inc. v. Greenwich Ins. Co.*, 628 F. App'x 802, 804 (2d Cir. 2015); *see also Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002) ("The best evidence of what parties to a written agreement intend is what they say in their writing.") The court's analysis of the SLA therefore must begin with the language of the agreement to determine if there is any ambiguity. *See Porco*, 679 F. Supp. 2d at 435.

"No ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (internal quotation marks omitted). When the contract is unambiguous, "it must be [interpreted] according to the plain meaning of its terms" and the "intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *Id.*; *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003). Reliance on extrinsic evidence is also inappropriate here, as the SLA expressly states that "[n]either party relies on any promises, inducements or representations made by the other, or expectations of more business dealings, except as expressly provided in this Agreement." Lender Decl. Ex. B at § 7.10.

Under the clear and unambiguous language in the SLA, "IBM" must provide Updates to Nuance for a ▬▬▬▬▬. 56.1 Statement ¶ 11. The SLA defines IBM as "IBM Corporation,

6

unless otherwise expressly limited to a division or group of IBM Corporation herein." *Id.* ¶ 12. This definition of IBM as "IBM Corporation" unless specifically limited is therefore "reasonably susceptible of only one meaning." *Greenfield*, 780 N.E.2d at 170. The relevant language of the Updates Provision, which sets out the entire definition of what the SLA collectively defines as "Updates," clearly defines Updates as coming from "IBM" and not a specific division or group of IBM Corporation. 56.1 Statement ¶ 11 (entitling Nuance to "any modifications, updates, upgrades, error corrections, bug fixes . . . and other changes . . . ▮▮▮▮▮▮▮▮▮▮, and additional Software as agreed by the parties, provided to Nuance by *IBM* under the Agreement (collectively 'Updates')") (emphasis added). *See Destiny USA Holdings, LLC v. Citigroup Global Markets Realty Corp.*, 897 N.Y.S.2d 669 (N.Y. Sup. Ct. 2009), *aff'd as modified*, 69 A.D.3d 212, 889 N.Y.S.2d 793 (4th Dep't 2009) (on preliminary injunction motion, court found, *inter alia*, that plaintiff would succeed on the merits of its declaratory judgment claim and breach of contract claims, based on the court's determination that "the very definitions before [the] Court in the [agreement]—the controlling agreement by and between the parties" supported plaintiff's reading of the contract); *see also Mionis v. Bank Julius Baer & Co.*, 301 A.D.2d 104, 109-110 (1st Dep't 2002) (reversing lower court decision that failed to give effect to a defined term in the parties' agreement).

      Other provisions in the SLA further reflect the parties' intention that IBM is obligated to deliver any and all Updates to Nuance, including those developed outside IBM Research Group. For example, Section 2.4 of the SLA states:

> If *IBM* provides . . . any modifications, updates, upgrades, error corrections, bug fixes, diagnostic and/or testing tools and other changes to the Licensed IBM Background Software, *IBM* will update Exhibit B [to the SLA] to include any additions or subtractions to the Open Source Software or the Third Party Code.

56.1 Statement ¶ 13 (emphasis added).  If Updates were limited just to those provided by IBM Research, there would be no need to refer to all of IBM in this clause since IBM would never be providing "modifications, updates, upgrades, error corrections, bug fixes, diagnostic and/or testing tools and other changes" that could require updates to Exhibit B.  It is also noteworthy that the update language used in this clause ties directly into the update language used in the SLA's definition of the Licensed IBM Background Software.  It is therefore unambiguous that the reference to IBM in the Updates Provision means IBM Corporation, *not* IBM Research Group.

     As the Second Circuit has repeatedly observed, the court must consider the "entire contract" in assessing ambiguity to "safeguard against adopting an interpretation that would render any individual provision superfluous." *RJE Corp.*, 329 F.3d at 314; *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008) ("The rules of contract construction require us to adopt an interpretation which gives meaning to every provision of the contract."); *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." (internal quotation marks omitted)).  The parties, represented by counsel, agreed to define IBM as "IBM Corporation"; any conclusion that allows the term IBM to be construed as only IBM Research Group would thus make the IBM definition superfluous.

     Notably, when the parties wanted to specify a distinct group or division within IBM, they plainly were able to do so.  For example, in the definition of Licensed IBM Background Software, the parties clearly set forth IBM Research Group as the entity that owned the DeepQA software at the time of the SLA.  *See* 56.1 Statement ¶ 11 (defining the existing "Licensed IBM

8

Background Software" as "(a) all Software that exists as of the Effective Date in all available formats (including Source Code and Object Code) that is owned by, or that has been developed or licensed by the IBM Research Group"). That made sense because at that point in time DeepQA was residing within IBM Research. However, recognizing that updates could be developed elsewhere within IBM, the parties used the broader term IBM when referring to the updates obligation. If the parties intended to limit future Updates to only those from IBM Research Group, then they could have used the same language in that same paragraph, rather than reverting to the defined term IBM. "[A] word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons." *Two Farms*, 628 F. App'x at 805. A full reading of the SLA therefore supports Nuance's interpretation of the Updates Provision.

Accordingly, summary judgment is warranted as the SLA makes clear that all "modifications, updates, upgrades, error corrections, bug fixes [,] other changes [and] additional Software," all collectively defined as Updates, will be provided to Nuance by IBM, with no limitation as to what group or division at IBM created the Update. 56.1 Statement ¶ 11. As such, Nuance respectfully requests that the Court order that IBM is required to deliver to Nuance all Updates to the Licensed IBM Background Software, regardless of where they are developed within IBM.[3]

---

[3] If the Court determines that the Updates Provision entitles Nuance to only those Updates developed by IBM Research Group, Nuance will litigate its implied covenant of good faith and fair dealing claim at trial. Given the promises made by IBM, it is patently bad faith to fork the code, transfer key IBM Research Group engineers who were supposed to be working on developing Updates to DeepQA to another division within IBM, and have all Updates developed outside of IBM Research, thereby denuding entirely the benefit of the bargain for which Nuance paid ▪▪▪▪▪▪▪▪.

## CONCLUSION

A review of the SLA reveals that the SLA clearly and unambiguously entitles Nuance to Updates from all of IBM, and not only those Updates developed by IBM Research Group. For all the foregoing reasons, summary judgment should be entered in favor of Nuance on its declaratory judgment claim and an order should be issued requiring IBM to deliver to Nuance all Updates to the Licensed IBM Background Software, regardless of where they are developed within IBM, and such other and further relief as this Court deems just and proper.

Dated: July 27, 2018
      New York, New York

*[signature]*

David J. Lender
Jessica L. Falk
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: 212-310-8000
Fax: 212-310-8007
david.lender@weil.com
jessica.falk@weil.com

David R. Singh
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: 650-802-3000
Fax: 650-802-3100
david.singh@weil.com

*Attorneys for Plaintiff*