UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>    Defendant. | Case No: 16-cv-5173<br>ECF Case |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Richard I. Werder, Jr.
Kevin S. Reed
Elinor Sutton
Hope Skibitsky
Florentina Dragulescu, *pro hac vice*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7000
Fax (212) 849-7100

*Attorneys for Defendant*
*International Business Machines*
*Corporation*

International Business Machines Corporation ("IBM") respectfully submits this memorandum of law in opposition to the motion by Nuance Communications, Inc. ("Nuance") for partial summary judgment. Additionally, IBM incorporates by reference its memorandum in support of its motion for summary judgment in this action ("IBM SJ Brief" or "IBM Br."), dated July 28, 2018 (ECF No. 121).

## BACKGROUND

IBM respectfully refers the Court to the IBM SJ Brief for a discussion of the background of this matter.

## ARGUMENT

Nuance's brief in support of its motion for partial summary judgment gratuitously strives to paint IBM as having schemed to deny Nuance the benefits of the SLA. Were there a need for a trial in this action, IBM would disprove that false narrative.[1] However, there is no such need, because Nuance's papers in support of its summary judgment motion do nothing so much as confirm that *IBM's* motion for summary judgment should be granted.

---

[1] For example, although it is immaterial to its motion, Nuance suggests that IBM Research personnel who worked on DeepQA were systemically transferred out of IBM Research and into SWG in order to deny Nuance the fruits of their work on DeepQA. Nuance Br. at 9, n.3. ▓▓▓ Reed Decl., Ex. 1 (Rhodin Tr.) at 17:20-24:2 ▓▓▓ Reed Decl., Ex. 2 (Brown Tr.) at 22:13-23:17, 59:9-61:6 ▓▓▓ IBM Statement of Facts (ECF No. 123) ¶ 54, Decl. of Kevin Reed in Support of IBM's SJ Brief (ECF No. 122), Ex. 19 (April 2, 2013 ▓▓▓ Reed Decl., Ex. 2 (Brown Tr.) at 302:21-305:21 ▓▓▓ Reed Decl., Ex. 3 (May 25, 2016 email wherein ▓▓▓ Reed Decl., Ex. 4 (High Tr.) at 68:24-69:7 ▓▓▓

*First*, Nuance's brief confirms that its claim that the SLA entitles it to Modifications developed outside of IBM Research is, as IBM explained in its motion, based on the phrase "provided to Nuance by IBM under the Agreement" in the SLA's definition of "Licensed IBM Background Software." Nuance, in fact, devotes the bulk of its brief to arguing that the parties' choice to use the term "IBM" in that phrase, rather than "IBM Research," unambiguously signifies that Nuance is entitled to Modifications developed anywhere within IBM. Nuance Br. at 6-9. This argument is misguided and wrong for the reasons set forth in the IBM SJ Brief. IBM Br. at 10-14. In short, the phrase "provided to Nuance by IBM under the Agreement" cannot reasonably be read to expand Nuance's license to include Modifications developed outside of IBM Research, because that language does not refer or relate to Modifications at all. It merely provides that IBM may at some later point elect to license additional code to Nuance under the terms of the SLA (an eventuality both parties agree never occurred). *Id.*

*Second*, Nuance's motion papers make clear that a key piece of extrinsic evidence – which the Court need not consider since the language of the contract is unambiguously against Nuance's position here – is undisputed. Nuance thus avers in its Local Rule 56.1 Statement that IBM maintained a firewall between IBM Research and SWG "to prevent the work on DeepQA by non-IBM Research Group employees from being transferred to Nuance under the Software License Agreement." Nuance SOF ¶ 21. As explained in the IBM SJ Brief, there would have been no reason for such a firewall if, as Nuance wrongly claims, the SLA entitled Nuance to work done by SWG to create and modify the Watson Core. IBM Br. at 16. Nuance, moreover, was aware of the firewall and raised no complaint. *Id.* at 15-16.

*Third*, Nuance's brief validates IBM's position that Nuance's claim for breach of the covenant of good faith must fail. Referencing its good faith claim, Nuance states:

> Given the promises made by IBM, it is patently bad faith to fork the code, transfer key IBM Research Group engineers who were supposed to be working on updates to DeepQA to another division within IBM, and have all Updates developed outside of IBM Research, thereby denuding entirely the benefit of the bargain for which Nuance paid ■■■

Nuance Br. at 9, n.3. In describing the claim that way, Nuance highlights that (i) the claim is impermissibly duplicative of its breach of contract claim because it seeks the same remedy – Modifications created outside of IBM Research – under the same contract (IBM Br. at 19), and (ii) the supposedly implied promise to develop all or substantially all Modifications within IBM Research is not one that Nuance would have logically understood or needed IBM to have made, given Nuance's alleged understanding that IBM committed in the SLA to provide Nuance with all Modifications, regardless of where within IBM they were developed. *Id.* at 21-22.

Additionally, the supposedly implied promise to develop all or substantially all Modifications within IBM Research would be impermissibly inconsistent with the SLA's express terms. *See Murphy v. Am. Home Prods. Corp.*, 448 N.E. 2d 86, 91 (N.Y. 1983) ("No obligation can be implied . . . which would be inconsistent with other terms of the contractual relationship."). In that regard, Section 7.12 of the SLA provides: "Except as expressly set forth in this Agreement, each party may . . . conduct its business in whatever way it chooses."[2] There is indisputably no express provision in the SLA that obligates IBM to develop all or substantially all Modifications within IBM Research (or even to develop Modifications at all). Accordingly, to imply such a restriction into the SLA and thereby prohibit IBM from choosing to commercialize DeepQA in SWG would impermissibly conflict with Section 7.12 by preventing IBM from conducting its business "in whatever way it chooses."

---

[2] Lender Decl. Ex. 1 at 10752.

3

## CONCLUSION

For the foregoing reasons, Nuance's motion for partial summary judgment should be denied.

Dated: New York, New York
September 14, 2018

                                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  *Kevin S. Reed*
      Richard I. Werder, Jr.
      Kevin S. Reed
      Elinor Sutton
      Hope Skibitsky
      Florentina Dragulescu, *pro hac vice*
      51 Madison Avenue, 22nd Floor
      New York, New York 10010
      Tel. (212) 849-7000
      Fax (212) 849-7100
      rickwerder@quinnemanuel.com
      kevinreed@quinnemanuel.com
      elinorsutton@quinnemanuel.com
      hopeskibitsky@quinnemanuel.com
      florentinafield@quinnemanuel.com

*Attorneys for Defendant*